## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**A.A. DOE,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO.  21-215**
    **c/w 21-1238**

**THE ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF NEW ORLEANS, ET AL.,**
    **Defendants**

**SECTION: "E" (1)**

*Applies to:  Both Cases*

## ORDER AND REASONS

Before the Court is a Motion to Dismiss and for Remand, filed by A. A. Doe.[1] Father John Asare-Dankwah ("Asare") filed an opposition to the motion.[2] A. A. Doe filed a reply.[3]

Also pending before the Court is a Motion to Stay Defamation Action, filed by A. A. Doe.[4] Asare filed an opposition to the motion.[5] A. A. Doe filed a reply.[6]

## BACKGROUND

On May 1, 2020, The Roman Catholic Church for the Archdiocese of New Orleans ("the Archdiocese") filed a voluntary petition for bankruptcy under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.[7] The Bankruptcy Court established a March 1, 2021, deadline for filing sexual abuse proofs of claim.[8]

---

[1] R. Doc. 28.
[2] R. Doc. 35.
[3] R. Doc. 43.
[4] R. Doc. 29.
[5] R. Doc. 36.
[6] R. Doc. 45.
[7] *In re The Roman Catholic Church for the Archdiocese of New Orleans*, No. 20-10846, R. Doc. 1 (Bankr. E.D. La.).
[8] *Id.* at R. Doc. 427.

On January 27, 2021, A. A. Doe filed suit in the Civil District Court for the Parish of Orleans against Asare, the Archdiocese, Archdiocese of New Orleans Indemnity, Inc., and Blessed Trinity Catholic Church.[9] A. A. Doe alleged that, when he was ten years old, he was raped by Asare while Asare was acting in his capacity as a Catholic priest serving in the Blessed Trinity Catholic Church Parish and "operating under the authority, supervision, and direction of the Archdiocese."[10]

On February 2, 2021, the Archdiocese removed A. A. Doe's state court suit to this Court pursuant to 28 U.S.C. §§ 1334 and 1452(a).[11] That same day, in the chapter 11 case, the Archdiocese filed a motion for relief for willful violation of the automatic stay against A. A. Doe's lawyers, alleging the filing of A. A. Doe's state court lawsuit was a willful violation of the bankruptcy stay.[12] On February 22, 2021, pursuant to an agreement reached between the Archdiocese and A.A. Doe's lawyers, the Bankruptcy Court ordered that, in full satisfaction of the Archdiocese's motion for relief for willful violation of the automatic stay, A. A. Doe's counsel will voluntarily dismiss the claims in the A. A. Doe removed lawsuit "against all parties affected by the automatic stay without prejudice."[13]

On March 1, 2021, this Court ordered the removed lawsuit stayed and administratively closed "pending the resolution of the Archdiocese's bankruptcy proceedings."[14] On March 24, 2021, A. A. Doe filed a motion in the removed lawsuit, seeking leave to file an amended complaint "in order to dismiss, without prejudice, the

---

[9] *A. A. Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al.,* No. 21-803, Civil District Court for the Parish of Orleans, State of Louisiana.
[10] *Id.*
[11] R. Doc. 1. A. A. Doe's state court petition is attached to the notice of removal, at R. Doc. 1-1.
[12] *In re The Roman Catholic Church for the Archdiocese of New Orleans*, No. 20-10846, R. Doc. 740 (Bankr. E.D. La.).
[13] *Id.* at R. Doc. 756.
[14] R. Doc. 7.

Roman Catholic Archdiocese of New Orleans, Blessed Trinity Catholic Church Parish and Archdiocese of New Orleans Indemnity, Inc. as a parties defendant."[15] This Court granted A. A. Doe's motion, ordering the dismissal of the Archdiocese, Blessed Trinity Catholic Church Parish and Archdiocese of New Orleans Indemnity, Inc.[16] This Court also granted A. A. Doe leave to file an amended complaint.[17] A. A. Doe's amended complaint in the removed lawsuit names Asare and Catholic Mutual Relief Society as Defendants.[18]

A. A. Doe filed a Proof of Claim in the Archdiocese's chapter 11 case.[19] On May 3, 2021, Asare instituted an adversary proceeding[20] in the Archdiocese bankruptcy case by filing a complaint for damages against A.A. Doe, which included an objection to the proof of claim. Asare brought claims against A. A. Doe for defamation, false light invasion of privacy, and intentional infliction of emotional distress.[21]

On June 24, 2021, A. A. Doe filed an answer to Asare's complaint in the adversary proceeding.[22] On that same day, A. A. Doe filed a Motion to Withdraw the Reference, arguing Asare's adversary complaint should be withdrawn from the bankruptcy court and decided by this Court because Asare's claims are for "personal injury torts" under 28 U.S.C. § 157(b)(5).[23] A. A. Doe further argued Asare's claims should be consolidated with the removed lawsuit currently pending before this Court.[24]

---

[15] R. Doc. 8.

[16] R. Doc. 9.

[17] *Id.*

[18] R. Doc. 10.

[19] In his motion to withdraw the reference, (*In Re: The Roman Catholic Church for the Archdiocese New Orleans*, No. 21-1238, R. Doc. 1 (E.D. La.)), A. A. Doe represents that he has filed a proof of claim. This proof of claim, along with all other sexual assault proofs of claim, has not been made available to the public.

[20] *Asare-Dankwah v. A. A. Doe*, No. 21-1016 R. Doc. 1, (Bankr. E.D. La.).

[21] *Id.*

[22] *Id.* at R. Doc. 20.

[23] *In Re: The Roman Catholic Church for the Archdiocese New Orleans*, No. 21-1238, R. Doc. 1 (E.D. La.). *See also Asare-Dankwah v. A. A. Doe*, No. 21-1016, R. Doc. 21, (Bankr. E.D. La.). A. A. Doe's motion to withdraw the reference was filed in the bankruptcy court and referred to this Court for disposition under Local Rule 83.4.3.

[24] *In Re: The Roman Catholic Church for the Archdiocese New Orleans*, No. 21-1238, R. Doc. 1 (E. D. La.).

On August 25, 2021, the Court issued an Order and Reasons withdrawing Asare's adversary complaint from the bankruptcy system.[25] The Court found that withdrawal of the reference was mandatory under 28 U.S.C. § 157(b)(5) because "Asare's claims are based on personal injury torts" arising under Louisiana tort law, and his claims "do not sound in finance, business contract or property."[26]

On August 25, 2021, the Court lifted the stay and administratively opened A. A. Doe's removed lawsuit.[27] On that same date, the Court consolidated Asare's withdrawn adversary complaint with A. A. Doe's removed lawsuit.[28] On September 22, 2021, a motion for dismissal of Defendant Catholic Mutual Relief Society, without prejudice, was filed by A. A. Doe.[29] On September 23, 2021, the Court granted the motion and dismissed Catholic Mutual Relief Society as a defendant without prejudice.[30] The sole remaining parties in these consolidated actions are A. A. Doe and Asare.

On September 29, 2021, the Court held a telephone preliminary conference with the parties.[31] During the September 29, 2021 conference, the Court ordered the parties to send a joint letter to the Court addressing any outstanding issues that needed to be discussed, and set a telephone status conference for Tuesday, October 26, 2021.[32]

On October 1, 2021, the Court issued an Order[33] requiring the parties to submit briefing on the following three issues: whether Asare is a party in interest for purposes of

---

[25] *Id.* at R. Doc. 7.
[26] *Id.* at p. 8.
[27] R. Doc. 13.
[28] R. Doc. 14. The instant action is comprised of these two consolidated actions.
[29] R. Doc. 19.
[30] R. Doc. 20.
[31] R. Doc. 24.
[32] *Id.*
[33] R. Doc. 25.

Federal Rule of Bankruptcy Procedure 3007(b);[34] whether Asare's objection to A. A. Doe's proof of claim is combined with a demand for relief of a kind specified in Federal Rule of Bankruptcy Procedure 7001;[35] and whether the debtor in Bankruptcy Case No. 20-10846 was given notice of Asare's objection to A. A. Doe's proof of claim.[36] On October 15, 2021, Asare filed his memorandum[37] in response to the Court's October 1, 2021 Order. In his memorandum, Asare contends he is a party in interest; that his adversary complaint combines an objection to A. A. Doe's proof of claim with claims that properly form the basis of an adversary proceeding under Rule 7001; and that he provided the Debtor with notice of his adversary complaint and the claim objection included therein by notice of electronic filing and via a conversation call between Asare's counsel and debtor's counsel.[38] On October 22, 2021, A. A. Doe filed his memorandum[39] in response to the Court's October 1, 2021 Order. In his memorandum, A. A. Doe contends Asare is not a party in interest; that Asare's objection is not combined with any demand for relief as specified under Rule 7001, but that, even if Rule 7001 does apply, Asare's objection was not properly filed in the bankruptcy or properly served under Rule 3007; and that "factual support is lacking as to whether the debtor was put on notice of the objection."[40] In addition, Asare filed a reply memorandum[41] to respond to and address the issues raised by A. A. Doe in his memorandum.

---

[34] Federal Rule of Bankruptcy Procedure 3007(b) states that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding."

[35] Federal Rule of Bankruptcy Procedure 7001 provides a list of ten types of actions denominated as adversary proceedings.

[36] As previously mentioned herein, the debtor in Bankruptcy Case No. 20-10846 is The Roman Catholic Church for the Archdiocese of New Orleans.

[37] R. Doc. 26.

[38] *Id.*

[39] R. Doc. 30.

[40] *Id.* at p. 10.

[41] R. Doc. 38.

On October 26, 2021, the Court held a telephone status conference.[42] During the conference, "[t]he parties agree[d] that Asare's objection to A. A. Doe's proof of claim, included in the complaint in the adversary action, is before this Court."[43]

## LAW AND ANALYSIS

In his motion to dismiss and for remand, A. A. Doe argues this matter "should be dismissed and remanded based on 28 U.S.C. § 1447(c) and Federal Rule of Civil Procedure 12(h)(3) as there is no subject matter jurisdiction."[44] A. A. Doe argues, alternatively, this matter should be remanded for the following "non-exclusive" reasons: (1) the mandatory abstention doctrine requires remand; (2) alternatively, the permissive abstention doctrine strongly favors remand; and (3) equity requires remand.[45]

In his opposition to A. A. Doe's motion to dismiss and for remand, Asare argues the Court should deny A. A. Doe's motion because the Court has subject matter jurisdiction over this proceeding, because mandatory abstention is inapplicable, and because the permissive abstention and equitable remand factors weigh against remanding this action.[46]

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."[47] The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.[48] In his motion to stay, A. A. Doe argues Asare's counterclaims for defamation, intentional infliction of

---

[42] R. Doc. 32.
[43] *Id.*
[44] R. Doc. 28-1 at p. 1.
[45] *Id.*
[46] R. Doc. 35 at p. 1.
[47] *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997).
[48] *See Nken v. Holder*, 556 U.S. 418 (2009).

emotional distress, and false light invasion of privacy should be stayed pending resolution of A.A. Doe's sexual abuse claims pursuant to the Court's inherent authority to control its docket.[49] A. A. Doe argues Louisiana courts consistently apply the rule that a defamation action based on allegations made in a judicial proceeding cannot be brought until the underlying judicial proceeding is terminated.[50] In his opposition, Asare argues his the Court should not stay his counterclaims because his counterclaims are not based upon statements made in a judicial proceeding.[51]

## I.  __The Court has subject matter jurisdiction.__

Federal courts are courts of limited subject matter jurisdiction, and they possess only the power authorized by the Constitution and by statute.[52] Under 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the plaintiff could have originally brought the action in federal court.[53] Section 1452 explicitly provides for removal of claims related to bankruptcy, stating that "[a] party may remove any claim or cause of action in a civil action," to federal court if the court "has jurisdiction of such claim or cause of action under section 1334 of this title."[54] 28 U.S.C. § 1334 establishes the bankruptcy jurisdiction of the federal district courts by providing, in pertinent part:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.[55]

---

[49] R. Doc. 29.
[50] *See* R. Doc. 29-1.
[51] R. Doc. 36.
[52] *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[53] *See* 28 U.S.C. § 1441.
[54] 28 U.S.C. § 1452(a).
[55] 28 U.S.C. § 1334(a), (b).

To determine whether jurisdiction exists under § 1334(b), "'it is necessary only to determine whether a matter is at least "related to" the bankruptcy.'"[56] A civil proceeding is related to a bankruptcy case if (1) the outcome could alter the rights, liabilities, options, or freedom of action (either positively or negatively) of the debtor; and (2) it could have some impact on the estate being administered in bankruptcy.[57]

A. A. Doe argues his petition was removed from state court by the Archdiocese under 28 U.S.C. §§ 1334 and 1452(a), and that these statutes are the sole basis of federal jurisdiction over this case.[58] A.A. Doe acknowledges there was subject matter jurisdiction under § 1334(b) at the time of removal because "there were defendants that were part of the Archdiocese Bankruptcy – the Archdiocese, the local Parish[,] Holy Trinity, and the Archdiocese Indemnity Corporation," but argues those defendants have since been dismissed, and the only remaining parties are A. A. Doe and Asare.[59] As a result, A. A. Doe argues this Court no longer has subject matter jurisdiction under § 1334(b) because the matter is no longer related to bankruptcy.

Asare argues subject matter jurisdiction is evaluated at the time of removal, and "that, at the very least, Doe's claims, at the time of removal, would have diminished the bankruptcy estate and thus related to the bankruptcy," pursuant to § 1334(b).[60] Asare further argues that, "regardless of when subject matter jurisdiction is judged," subject matter jurisdiction exists under § 1334(b) because the claims before this court are related to the bankruptcy proceeding.[61] Specifically, Asare argues dismissal of A. A. Doe's claims

---

[56] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting *Walker v. Cadle Co.* (*In re Walker*), 51 F.3d 562, 569 (5th Cir.1995)).

[57] *See In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[58] R. Doc. 28-1 at p. 3.

[59] *Id.* at pp. 3–4.

[60] R. Doc. 35 at p. 5; *id.* at n.21.

[61] R. Doc. 35 at p. 5.

against him in this case would result in the rejection of A. A. Doe's proof of claim in the bankruptcy, which could conceivably have an effect on the bankruptcy.[62]

In the Notice of Removal filed by the Archdiocese on February 1, 2021, the Archdiocese averred as follows:

12. The State Court Action is related to the Archdiocese's Chapter 11 Case and therefore, is removable under 28 U.S.C. § 1452(a) because, inter alia:

• In the Petition, Plaintiff asserts claims to recover monetary damages from the Archdiocese. Specifically, the Petition seeks damages based upon actions or omissions allegedly committed by the Archdiocese and its officers, employees, agents, or other related parties. Any recovery of such damages would necessarily diminish the Archdiocese's estate.

• The Archdiocese and certain non-debtor co-defendants named in the Petition, who are alleged to be agents and/or employees of the Archdiocese, share an identity of interest such that a claim against the non-debtor co-defendants is, in effect, a claim against the Archdiocese's estate. . . .

• The claims and allegations in the Petition against the non-debtor co-defendants are inextricably intertwined with the claims and allegations against the Archdiocese such that the entire State Court Action is "related to" the Archdiocese's Chapter 11 Case. The claims and allegations in the Petition arise out of a common nucleus of operative facts and raise substantially similar questions of law. As one consequence, the Archdiocese may be compelled to participate in the litigation, notwithstanding the automatic stay, to protect its own interests. Moreover, the continuation of the State Court Action, even if stayed against the Archdiocese, would likely require the Archdiocese or its employees to expend time and resources in responding to discovery requests and participating in depositions.

13. Accordingly, the entire State Court Action—and not just the claims against the Archdiocese—is appropriately removed.[63]

As previously mentioned, at this time, the Archdiocese, its insurer, the local parish church, and Catholic Mutual Relief Society of America are no longer defendants in this

---

[62] R. Doc. 35 at p. 6.
[63] R. Doc. 1 at ¶¶ 12–13.

action. The only remaining parties are A. A. Doe and Asare. The question is whether the Court continues to have subject matter jurisdiction under § 1334(b).

In general, federal district courts must judge their jurisdiction based on the status of the case at the time of removal.[64] The Fifth Circuit has expressly held that the time-of-filing- rule applies to § 1334(b).[65] In *Double Eagle Energy Servsices, L.L.C. v. MarkWest Utica EMG, L.L.C.*, the Fifth Circuit addressed the question of "what happens if a lawsuit, when filed, is related to a bankruptcy, but then something happens that dissolves the bankruptcy connection."[66] The Fifth Circuit held that the time-of-filing rule applies to bankruptcy jurisdiction and that "the related-to-bankruptcy jurisdiction that existed at the outset of this case never went away."[67] Accordingly, this Court examines its subject matter jurisdiction based on a snapshot taken at the time of removal from state court.[68]

The parties agree that, at the time of removal, this case was related to the Archdiocese's chapter 11 case.[69] If A. A. Doe had prevailed on his state law tort claims against the Archdiocese, the Archdiocese's estate being administered in the chapter 11 case would have been diminished, and the Archdiocese's rights and liabilities would have been altered.[70] Furthermore, as to A. A. Doe's claims against Asare, these claims also were related to the Archdiocese's chapter 11 case at the time of removal. In his complaint, A. A.

---

[64] *See Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061 (5th Cir.1992), cert. denied 506 U.S. 867, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992).

[65] *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019).

[66] *Id.*

[67] *Id.*

[68] *See Bristol-Myers Squibb Co. v. Safety Nat. Cas. Corp.*, 43 F. Supp. 2d 734, 743 (E.D. Tex. 1999).

[69] As mentioned above, a proceeding is related to a bankruptcy case if (1) the outcome could alter the rights, liabilities, options, or freedom of action (either positively or negatively) of the debtor; and (2) it could have some impact on the estate being administered in bankruptcy. *See In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[70] *See, e.g.,* Jones v. JCC Holding Co., 2001 U.S. Dist. LEXIS 7043, *7 (holding that subject matter jurisdiction existed under § 1334 because the plaintiff asserted" claims directly against two of the [chapter 11] debtors, and thus whether or not the claims succeed will directly impact the estate being administered in bankruptcy.")

Doe alleges Asare was, at all relevant times, "operating under the authority, supervision, and direction of the Archdiocese," and was employed by the Archdiocese.[71] Thus, a determination of Asare's liability could conceivably have had an effect on the Archdiocese's estate, as A. A. Doe alleged the Archdiocese was responsible for the actions of Asare. The Court agrees this proceeding was related to the Archdiocese's chapter 11 case at the time of removal.

The time of filing rule provides that "subject matter jurisdiction is determined when a federal court's jurisdiction is first invoked."[72] In this case, the Court's jurisdiction was first invoked when the Archdiocese filed its Notice of Removal, and related to jurisdiction indisputably existed at that time. Therefore, under the time of filing rule, the related to jurisdiction "that existed at the outset of the case never went away."[73] The dismissal of the Archdiocese, its insurer, and the local parish church does not divest the Court of subject matter jurisdiction under 28 U.S.C. § 1334(b).

## II.   Asare is not a party in interest with standing to object to A. A. Doe's proof of claim; Asare's objection is overruled.

Asare argues he is a party in interest under the Bankruptcy Code because he "has a significant financial interest in the outcome of A. A. Doe's proof of claim in the bankruptcy case."[74] Specifically, Asare argues that

> as a result of [A. A.] Doe's claims in the Removed Matter and filing of his proof of claim, the Debtor [the Archdiocese] removed Fr. Asare from his position as pastor, and his provision of housing was withdrawn. Without being able to object to [A. A.] Doe's proof of claim, Fr. Asare faces continued professional and financial losses due to his removal. Accordingly, an order from the bankruptcy court regarding [A. A. Doe's proof of] claim would diminish [Asare's] property, increase his burdens, and impair his rights.[75]

---

[71] *See* R. Doc. 1-1; *see also* R. Doc. 10.
[72] *Id.* at 263.
[73] *See id.* at 263–64.
[74] R. Doc. 26 at p. 4.
[75] *Id.* at pp. 4–5.

A. A. Doe argues Asare is not a party in interest under the Bankruptcy Code because Asare does not have a pecuniary interest that is directly affected by the bankruptcy proceeding, and because Asare does not have an interest in the property to be administered and distributed in the bankruptcy.[76] A. A. Doe further argues Asare "does not have a direct financial stake in the outcome of the case before the Bankruptcy court, and [Asare's] pecuniary interest is too remote."[77]

Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter [11]."[78] Only "[a] party in interest has standing to object to a proof of claim."[79] Although the term "party in interest" appears more than thirty times in the Bankruptcy Code, the term is not defined in the Bankruptcy Code or in the Bankruptcy Rules. Furthermore, it is well recognized that the list in § 1109(b) is illustrative, not exclusive.[80] A party in interest "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings."[81] A party does not have standing to raise objections "that relate solely to others, or that go to issues that do not directly and adversely affect them

---

[76] R. Doc. 30 at p. 6.
[77] *Id.* at p. 5.
[78] 11 U.S.C. § 1109(b).
[79] *Matter of Xenon Anesthesia of Texas, P.L.L.C.*, 698 F. App'x 793, 794 (5th Cir. 2017) (unpublished) (per curiam).
[80] *See In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985); *see also In re Plaisance*, 619 B.R. 148 (Bankr. W.D. La. 2020).
[81] *In re E.S. Bankest*, 321 B.R. 590, 594 (Bankr. S.D. Fla. 2005) (citing *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995)).

pecuniarily."[82] "[C]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation."[83]

Asare does not fall within any of the listed categories in § 1109(b) as he is not the debtor, a creditor, an equity security holder, a creditor's committee, an equity security holders' committee, or a trustee. In *In re Alpha Natural Resources, Inc.*, the court addressed whether parties not falling into any of the listed categories of § 1109(b) could otherwise be classified as parties in interest.[84] In that case, the debtors, a coal mining company and its subsidiaries, after filing voluntary petitions for relief under title 11, filed a motion in the bankruptcy court for approval of a compromise between the debtors and the state environmental agency.[85] The Sierra Club and other environmental nonprofit groups ("the Environmental Parties") filed an objection to the motion for approval of the compromise on the grounds that the compromise violated state and federal laws.[86] The debtors challenged the objection on the ground that the environmental parties lacked standing to object.[87] The court first stated that, "[a]s the Environmental Parties plainly do not fall into any of the specific categories listed in § 1109(b) of the Bankruptcy Code, they must rely for purposes of standing on being categorized generally as a "party in interest" in order to be heard in this chapter 11 proceeding.[88] The court held the Environmental Parties were not parties in interest under § 1109(b) because they did not have any pecuniary interest that would be directly affected by the bankruptcy proceeding, and that

---

[82] *In re Plaisance*, 619 B.R. at 155 (quoting *In re Simplot*, No. 06-00002-TLM, 2007 WL 2479664, at *10 (Bankr. D. Idaho Aug. 28, 2007)).
[83] *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) (citing *In re Penn-Dixie Industries, Inc.*, 9 B.R. 941, 943 n. 7 (Bankr. S.D. N.Y. 1981)).
[84] *In re Alpha Nat. Res. Inc.*, 544 B.R. 848 (Bankr. E.D. Va. 2016).
[85] *Id.* at 850–51.
[86] *Id.* at 851.
[87] *Id.* at 854.
[88] *Id.* at 855.

"[a] remote pecuniary interest will not suffice for standing.[89] In reaching its conclusion that the pecuniary interest, if any, of the Environmental Parties was "too remote" to confer standing to object, the *Alpha Natural* court cited to *In re C.P. Hall Co.*[90]

In *In re C.P. Hall Co.*, the Seventh Circuit Court of Appeals addressed the question whether a nonparty to a bankruptcy proceeding should be entitled to intervene in the proceeding.[91] The debtor in that case was a former distributor of asbestos and asbestos containing products who filed a petition for bankruptcy after tens of thousands of asbestos-related claims were filed against it.[92] The debtor had $10 million remaining in insurance coverage from one of its insurers, Integrity Insurance, also bankrupt, but there was a question whether the Integrity policy covered the loss for which the debtor was seeking indemnity under the policy.[93] The debtor and Integrity reached a settlement for $4.125 million, and the bankruptcy judge approved the settlement.[94] Columbia Casualty Company, an excess insurer of the debtor's asbestos liabilities, which was not a creditor of the debtor, objected to the settlement because it was concerned that the settlement between the debtor and Integrity would increase the likelihood that it would have to honor its secondary-coverage obligation.[95] The bankruptcy judge refused to consider Columbia's objection on the ground that Columbia had no right to object, and the district court affirmed on appeal.[96] Columbia then appealed to the Seventh Circuit. The appellate court explained that while the list of parties in interest in § 1109(b) is not exhaustive, it "does

---

[89] *Id.* at 856.
[90] *In re C.P. Hall Co.*, 750 F.3d 659 (7th Cir. 2014).
[91] *Id.*
[92] *Id.* at 660.
[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*

suggest that such a party is someone who has a legally recognized interest in the debtor's assets, namely the debtor (or the trustee in bankruptcy, if as in this case there is a trustee) and the creditors."[97] The court concluded that, because Columbia was not a creditor, debtor, or trustee, but was merely "a firm that may suffer collateral damage from a ruling in a bankruptcy proceeding," Columbia's pecuniary interest was too remote to entitle it to object.[98]

Asare relies on the case of *In re Lundahl*.[99] In that case, the debtor filed a voluntary chapter 13 petition on January 31, 2003.[100] The debtor filed her statements and schedules on January 31, 2003, and Eli Lilly was not listed as a creditor by the debtor on such schedule or mailing matrix, even though Eli Lilly had an outstanding judgment against the debtor.[101] Eight months after the original petition was filed, and after the claims bar date, the debtor filed an amended Schedule B, which stated "SET OFF OR INVALID CLAIMS" and then listed $50,000 as a void judgment as to Eli Lilly, asserting she had a set-off claim against Eli Lilly.[102] The debtor also instituted an adversarial proceeding against Eli Lilly in connection with her chapter 13 case.[103] When the debtor moved for confirmation of her chapter 13 plan, Eli Lilly objected, and the debtor argued Eli Lilly lacked standing to object because it did not file a timely proof of claim.[104] The court explained that, as a direct result of debtor's failure to list Eli Lilly as a creditor in her statements and schedules, Eli Lilly did not receive notice of the bankruptcy in time to file

---

[97] *Id.* at 661.
[98] *Id.*
[99] *In re Lundahl*, 307 B.R. 233, 240 (Bankr. D. Utah 2003).
[100] *Id.* at 236.
[101] *Id.* at 237.
[102] *Id.* at 238, 239.
[103] *Id.* at 238.
[104] *Id.* at 239.

a proof of claim.[105] The court concluded that Eli Lilly, a judgment creditor of the debtor, was a party in interest with the potential to be substantially financially impacted, given the debtor's filing of an adversary proceeding against it.[106] In reaching its conclusion, the court relied an opinion from the United States Bankruptcy Appellate Panel of the Tenth Circuit, which explained that

> [w]hile some courts have interpreted the phrase [party in interest] to exclude a Chapter 13 creditor who did not hold an allowed claim, we do not agree with the Debtor's extrapolation that a party in interest is limited solely to creditors. Section 1109(b), although not applicable in Chapter 13, provides guidance in determining who is a party in interest. The phrase is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings. . . . We extend this definition to include anyone who has an interest in the property to be administered and distributed under the Chapter 13 plan.[107]

Asare's reliance on *In re Lundahl* is misplaced as Asare is not similarly situated to Eli Lilly. Eli Lilly was a judgment creditor of the debtor, and its pecuniary interest was directly affected by the bankruptcy proceeding. The debtor instituted an adversary proceeding against Eli Lilly, arguing that there was "$50,000 as a void judgment as to Eli Lilly," based on a claim of set off.[108] Asare is not a judgment creditor of the Archdiocese, and the Archdoicese has not instituted an adversary proceeding against him.

Instead, Asare is similarly situated to the environmental parties in *Alpha Natural Resources* and to the excess insurer in *Hall.* Any pecuniary interest Asare might have in the outcome of A. A. Doe's proof of claim in the Archdiocese's title 11 case is indirect and remote. Asare essentially argues that, because the Archdiocese responded to the sexual assault allegation on which A. A. Doe's proof of claim is based by removing Asare from his

---

[105] *Id.*
[106] *Id.* at 240–41.
[107] *Id.* at 240–41 (quoting *In re Davis*, 239 B.R. 573, 579 (B.A.P. 10th Cir. 1999)).
[108] The debtor in that case was pro se.

position as pastor and withdrawing his housing provision, Asare has a direct financial stake in the outcome of A. A. Doe's proof of claim. Asare has no direct financial stake in the Archdiocese's estate, he has filed no proof of claim in the Archdiocese's bankruptcy, he will not be responsible for payment on A. A. Doe's proof of claim if the proof of claim is allowed, and allowance of the proof of claim will not directly affect Asare in any way. Asare is not a party in interest; rather, he is merely an individual who believes he may suffer collateral damage from a ruling allowing A. A. Doe's proof of claim. Any hypothetical damage Asare may suffer will not result directly from a ruling allowing A. A. Doe's proof of claim.

Asare is not a party in interest and does not have standing to object to A. A. Doe's proof of claim. Asare's objection is overruled.[109]

## III.   Mandatory abstention is inapplicable to this case.

A. A. Doe argues that, in the event this civil case is related to the Archdiocese's chapter 11 case, this civil case is subject to abstention and remand.[110] Asare argues mandatory abstention is inapplicable in this case because A. A. Doe's lawsuit was filed after the Archdiocese's filed its voluntary petition in bankruptcy, and because there is currently no state court action pending.[111]

Title 28 U.S.C. § 1334(c)(2) governs mandatory abstention. Section 1334(c)(2) states that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States

---

[109] As mentioned above, the parties agreed Asare's claim objection was withdrawn to this Court when the Court issued its Order and Reasons withdrawing the reference of Asare's adversary complaint, and so this Court may rule on the claim objection. *See* R. Doc. 32.
[110] R. Doc. 28-1 at p. 6.
[111] R. Doc. 35 at p. 7.

> absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[112]

The Fifth Circuit has held that district courts must abstain from hearing bankruptcy proceedings under § 1334(c)(2) when (1) the state law claim has "no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related [to] a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court."[113] In addition, the motion requesting abstention under § 1334(c)(2) must be "timely."[114]

The first two factors are clearly met. First, this case involves only claims brought under Louisiana state law, and both parties are Louisiana residents. Thus, bankruptcy jurisdiction is the only basis for federal subject matter jurisdiction over this case. Second, the parties agree, and the Court concurs, that although the claims involved in this case are related to a bankruptcy case, the claims are not proceedings arising under title 11, nor are they proceedings arising in a title 11 case.[115] Because these claims are related to a bankruptcy, and are not proceedings arising under title 11 or in a title 11 case, these proceedings are non-core.[116]

---

[112] 28 U.S.C. § 1334(c)(2).

[113] *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (citing *Schuster v. Mims* (*In re Rupp & Bowman*), 109 F.3d 237, 239 (5th Cir.1997)).

[114] *See* 28 U.S.C. § 1334(c)(2).

[115] Under 28 U.S.C. § 1334(b), federal district courts have "original but not exclusive jurisdiction" over three distinct categories of civil proceedings: (i) civil proceedings arising under title 11; (ii) civil proceedings arising in a case under title 11; and (iii) civil proceedings that are related to a bankruptcy case. 28 U.S.C. § 1334(b). A civil proceeding arises under title 11 if it "involve[s] a cause of action created or determined by a statutory provision of title 11." *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 96 (5th Cir. 1987). Civil proceedings arising in a title 11 case are "those that are not based on any right expressly created by [title 11, but nevertheless would have no existence outside of the bankruptcy." *Id.* at 97. These first two categories of civil proceedings "are statutorily defined as 'core' proceedings under 28 U.S.C.§ 157(b)." *In re Dune Energy, Inc.*, 575 B.R. 716, 723 (Bankr. W.D. Tex. 2017). The third category of civil proceedings—those related to a case under title 11—is the broadest category, and proceedings within this category are often called "non-core" proceedings. *See generally id.*

[116] Asare's arguments that his claim objection renders this a core proceeding are moot as his claim objection has been overruled because Asare is not a party in interest.

With respect to the timeliness of the motion for mandatory abstention, neither the statutory text of § 1334(c)(2), nor the Federal Rules of Bankruptcy Procedure or the local bankruptcy rules, provide guidance on what constitutes a timely motion. Neither of the parties, in their briefing, substantively address whether this motion was timely filed; A. A. Doe, for his part, merely concludes the motion was timely filed, while Asare does not address the timeliness factor. The Archdiocese filed its Notice of Removal on February 2, 2021, and the instant motion was filed on October 21, 2021. As outlined above, the procedural background of this consolidated action is complex. The removed lawsuit filed by A. A. Doe was stayed on March 3, 2021. On March 29, 2021, the Archdiocese, its insurer, and the local parish were dismissed. On August 25, 2021, the Court withdrew the reference of Asare's adversary complaint, lifted the stay in the removed lawsuit, and consolidated the adversary action with the removed lawsuit. The timeliness question in this case focuses on whether the motion, filed eight weeks after the reference was withdrawn and the stay was lifted, was timely. In *Verges v. Verges*, a separate section of this Court concluded that a motion to remand requesting mandatory abstention, filed within 30 days of removal, was timely.[117] The Court concludes that, in light of the complex history of this case, the motion was timely filed.

The third criterion for mandatory abstention is not met in this case. Although A. A. Doe's lawsuit was commenced in state court,[118] it was not commenced in state court *prior* to the filing of the Archdiocese's chapter 11 petition. The Archdiocese filed a voluntary petition for bankruptcy under chapter 11 on May 1, 2020.[119] On January 27,

---

[117] *Verges v. Verges*, No. CIV.A. 03-3533, 2004 WL 1375304, at *2 (E.D. La. June 17, 2004).
[118] *See J.T. Thorpe Co. v. Am. Motorists,* No. CIV.A. H-02-4598, 2003 WL 23323005, at *2 n.3 (S.D. Tex. June 9, 2003).
[119] *In re The Roman Catholic Church for the Archdiocese of New Orleans*, No. 20-10846, R. Doc. 1 (Bankr. E.D. La.).

2021, A. A. Doe filed his complaint in the Civil District Court for the Parish of Orleans.[120]

To meet the third criterion, the cause of action must have been commenced prior to the

filing of the petition commencing the title 11 case.[121]

In *In re Freeway Foods of Greensboro, Inc.*, the United States Bankruptcy Court

for the Middle District of North Carolina aptly addressed the question of whether, for the

mandatory abstention provision to apply, the action must be filed prior to the bankruptcy

petition.[122] The court explained as follows:

> A leading treatise states that "many courts have held that for the statute to
> be applicable, the cause of action must have been commenced prior to the
> filing of the petition commencing the title 11 case." 1 Collier on Bankruptcy,
> ¶ 3.05[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); see also
> Container Transport, Inc. v. Scott Paper Co. (In re Container Transport,
> Inc.), 86 B.R. 804, 805–07 (E.D.Pa.1988) (holding that "an action [must]
> be pending in a state court forum at the time that a proceeding is initiated
> in the bankruptcy court in order for a party to successfully invoke
> mandatory abstention"); Ram Constr. Co. v. Port Authority of Allegheny
> County, 49 B.R. 363, 367 (W.D.Pa.1985) (holding that section 1334(c)(2)
> was not applicable since an action had not been commenced in state court);
> Taxel v. Commercebank (In re World Fin. Servs. Center, Inc.), 64 B.R. 980,
> 989 (Bankr.S.D.Cal.1986) ("Mandatory abstention does not apply to the
> instant case in that there is no pending state court action."); Braucher v.
> Cont'l Ill. Nat'l Bank & Trust Co. of Chicago (In re Illinois–California
> Express, Inc.), 50 B.R. 232 (Bankr.D.Colo.1985) (holding that a "proceeding
> in the state court forum [must have] been commenced" for mandatory
> abstention to apply); Excelite Corp. v. Custom Vanities, Inc. (In re Excelite
> Corp.), 49 B.R. 923, 925 (Bankr.N.D.Ga.1985) (holding that mandatory
> abstention was not applicable when there was no state court action
> pending); contra Midgard Corp. v. Kennedy (In re Midgard Corp.), 204 B.R.
> 764, 778 (10th Cir. BAP 1997) (finding that the majority position "reads a
> requirement into the statute which plainly does not exist"); World Solar
> Corp. v. Steinbaum (In re World Solar Corp.), 81 B.R. 603, 610
> (Bankr.S.D.Cal.1988) (holding that "a pending state court action is not a
> prerequisite for mandatory abstention" so long as the "action can be filed
> on a timely basis in a state court of appropriate jurisdiction").

---

[120] *A. A. Doe v. The Roman Catholic Church of the Archdiocese of New Orleans, et al.*, No. 21-803, Civil District Court for the Parish of Orleans, State of Louisiana.
[121] *Jones v. JCC Holding Co.*, 2001 U.S. Dist. LEXIS 7043, *11.
[122] *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860 (Bankr. M.D.N.C. 2011).

The clear majority of cases supports the position that the cause of action must be pending in state court prior to the bankruptcy *878 for mandatory abstention to apply. See HH1, LLC v. Lo'r Decks at Calico Jacks, LLC, Adv. No. 10–2004, 2010 WL 1009235, at *4 (Bankr.M.D.N.C. Mar.18, 2010) ("the fifth requirement under section 1334(c)(2) is that there must be an action commenced in state court"); In re Ackerman, Herbst & Pliskow, M.D., P.A., 221 B.R. 568, 569 (Bankr.S.D.Fla.1998) ("like the majority of courts that have considered this issue, this Court finds that some type of 'proceeding' must be pending for mandatory abstention to apply"); TTS, Inc. v. Stackfleth (In re Total Technical Servs., Inc.), 142 B.R. 96 (Bankr.D.Del.1992) ("Mandatory abstention does not apply, however, because an action has not previously been commenced in a State forum, as § 1334(c)(2) requires.").

The minority position is inconsistent with the legislative history and the plain language of the statute. As Collier notes, "a forebear of section 1334(c)(2) referred to a state court action that 'has been or will be timely instituted.' " The currently applicable statute uses different language, with no reference to an action that "will be timely instituted." This fact strongly suggests that the viewpoint espoused in World Solar Corp. is incorrect. See 1 Collier on Bankruptcy, ¶ 3.05[2], n. 17 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). The minority view is further weakened by the plain language of the statute, which states that the court shall abstain "if an action is commenced ... in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis added); see also Flores Rivera v. Telemundo Group, 133 B.R. 674, 676 (D.P.R.1991) (holding that World Solar Corp. was contrary to the clear language of § 1334(c)(2)); In re Boughton, 49 B.R. 312, 315 (Bankr.N.D.Ill.1985) ("Coronet suggests that the cited language means 'is commenced or can be commenced ... in a State forum.' That is not, however, the import of the language used."). The minority position essentially rewrites the statute. Thus, the better view is that a case must be pending in state court prior to bankruptcy for mandatory abstention to apply.[123]

This Court finds the reasoning employed in *In re Freeway Foods* convincing. The majority view, requiring that a case be pending in state court prior to bankruptcy for mandatory abstention to apply, is the better view.

Finally, with respect to the fourth factor, which asks whether the plaintiff's claims are capable of timely adjudication in state court, A. A. Doe has not produced any evidence

---

[123] *Id.* at 877–78.

or offered any argument on this point. Instead, A. A. Doe merely states, in conclusory fashion, that "the case can be timely adjudicated in state court."[124] Bankruptcy courts within the Fifth Circuit have noted that "[a] naked assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy the requirement [of mandatory abstention]."[125] The Court concludes Plaintiff has failed to meet his burden to show that his claims can be timely adjudicated in state court.[126]

Having concluded the prerequisites to mandatory abstention under § 1334(c)(2) are not met, the Court finds mandatory abstention is not required in this case.

## IV.   **The Court will not remand this case under the doctrines of permissive abstention and equitable remand.**

Finally, A. A. Doe asks the Court to exercise its discretion to remand this case under the doctrines of equitable remand and permissive abstention. A. A. Doe argues the permissive abstention and equitable remand factors weigh in favor of remanding this case to state court, while Asare argues the factors weigh against remand.

Permissive abstention is governed by § 1334(c)(1), which provides that

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[127]

Equitable remand of bankruptcy matters is provided for under § 1452(b). Section 1452(b) provides the court to which a lawsuit has been removed based on jurisdiction under §

---

[124] R. Doc. 28-1 at p. 9.

[125] *J.T. Thorpe Co. v. Am. Motorists*, No. CIV.A. H-02-4598, 2003 WL 23323005, at *3 (S.D. Tex. June 9, 2003); *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 605–06 (S.D. Tex. 1999).

[126] *Doe v. Archdiocese of New Orleans Indem., Inc.*, No. CV 20-1338, 2020 WL 4593443, at *3 (E.D. La. Aug. 11, 2020) (stating that "district courts usually require evidence such as scheduling orders and a discovery plan to prove the state court is ready to timely adjudicate claims.")

[127] 28 U.S.C. § 1334(c)(1).

1334 "may remand such claim or cause of action on any equitable ground."[128] "[T]he factors governing permissive abstention and equitable remand are nearly identical."[129] "Because the analysis is so similar, courts that grant remand often employ equitable remand in 28 U.S.C. § 1452(b), which allows a court to remand "on any equitable ground" claims removed under § 1452(a)."[130] Therefore, the Court need not undertake separate analyses to determine whether permissive abstention or equitable remand is appropriate; the doctrines are properly addressed with one analysis.

The "general rule is that a federal court must accept the jurisdiction granted it," and permissive abstention and equitable remand are warranted "only on very rare occasions."[131] In determining whether permissive abstention and equitable remand are appropriate, the analysis starts with the presumption in favor of "exercising jurisdiction over [the] lawsuit and not abstaining in favor of the state court,"[132] with the balance "heavily weighted in favor of the exercise of jurisdiction."[133] "The proposition that bankruptcy courts have broad discretion on whether to abstain comes from both the plain language of [§ 1334(c)(1)] and the Fifth Circuit's decision in *Wood v. Wood*."[134] A court's

---

[128] *Id.* § 1452(b).

[129] *Doe v. Archdiocese*, 2020 WL 4593443, at *3-(E.D. La. Aug. 11, 2020).

[130] *Id.*

[131] *In re Viking Offshore (USA) Inc.*, 405 B.R. 434, 440 (Bankr. S.D. Tex. 2008) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

[132] *Pettus Props. v. VFC Partners 8, LLC* (*In re Pettus Props.*), 2012 Bankr. LEXIS 1181, *10 (citing *Walter v. Freeway Foods, Inc.* (*In re Freeway Foods of Greensboro, Inc.*), 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011) ("This Court begins with the understanding that a federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.")).

[133] *In re Schlotzsky's, Inc.*, 351 B.R. 430, 435 (Bankr. W.D. Tex. 2006) (quoting *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734 (5th Cir.1999)).

[134] *Houston Baseball Partners LLC v. Comcast Corp.* (*In re Houston Reg'l Sports Network, L.P.*), 514 B.R. 211, 218 (explaining that§ 1334(c)(1) is a "broadly-worded statute allowing federal courts to decline to exercise jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law," and that, "[i]n *Wood*, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state courts to decide.").

decision whether or not to permissively abstain is reviewed for abuse of discretion.[135] The burden of proving that permissive abstention or equitable remand is appropriate lies with the party seeking abstention or remand.[136]

In a recent lawsuit involving claims of sexual abuse against the Archdiocese and/or its affiliates, a separate section of this Court aptly summarized the law governing equitable remand and permissive abstention, listing relevant factors such as the convenience of the forum, the presence of non-debtor parties, considerations of comity, and whether the case should be tried as a whole in state court.[137] Many of those factors, however, are not applicable because of the posture of this case, as all parties to this action are non-debtors and all claims the parties have brought against one another are currently before the Court.

Other factors that do apply are neutral.[138] First, the convenience of the forum factor is neutral, because both this Court and the state court in which A. A. Doe filed his petition are seated in New Orleans, Louisiana, and are equally convenient. Second, the bifurcation

---

[135] *In re Schlotzsky's, Inc.*, 351 B.R. at 434.

[136] *Pettus Props*, 2012 Bankr. LEXIS 1181 at *9 ("The burden of proving the grounds for permissive abstention or equitable remand of the Lawsuit rests with Plaintiffs.")

[137] *Doe v. Archdiocese*, 2020 WL 4593443, at *3-4 (E.D. La. Aug. 11, 2020) (internal quotation marks omitted) (listing twelve factors to be considered). *See In re Houston Reg'l Sports Network, L.P.*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014) (listing fourteen factors courts consider in "deciding whether to abstain or remand.").

[138] In opining on the appropriateness of courts relying on multi-factor tests to decide permissive abstention and equitable remand questions, the court in *In re Schlotzsky's, Inc.* explained that

> [w]hile helpful, [such multi-factor tests] are by their very nature, not dispositive. Mechanical applications of such tests to rule on equitable issues that are heavily fact-specific are often doomed to produce incorrect outcomes. The various tests offered by these opinions must be viewed in the larger context of the task presented—to arrive at the equitable application of the permissive abstention doctrine, as appropriately applied in the bankruptcy context. Or, more simply, we must avoid losing the forest for the trees. See Murphy v. Uncle Ben's, Inc., 168 F.3d 734 (5th Cir.1999) ("[t]he decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a 'mechanical checklist' of [abstention] factors, but on a 'careful balancing' of them, 'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'")

351 B.R. 430, 434–35 (Bankr. W.D. Tex. 2006).

of the civil action factor is neutral because the case will be tried as a whole, whether in this Court or in state court. The comity factor is neutral because, even though "[t]hese are solely state law causes of action between non-debtors . . . there are no novel issues that present a countervailing state interest."[139] The factor which examines whether the state court would be better able to handle issues of state law than this Court also is neutral. While both A. A. Doe's claims and Asare's claims are based on state law, the claims do not raise complex or unresolved questions of state law but, instead, are run-of-the-mill state tort law claims.[140] This Court, sitting in diversity, is frequently tasked with applying the tort law of the state of Louisiana, and the Court is well equipped to do so here. Finally, the right to a jury trial factor also is neutral because a jury trial can be held in either forum.

A. A. Doe argues the Court should exercise its discretion to permissively abstain from hearing and equitably remand this case because of the interest in judicial economy and because of prejudice to him if the case remains in this Court. He relies on *Jackson v. Johnson & Johnson*.[141] In *Jackson*, the district court found that equitable considerations favored remand, because

> Another consideration, prejudice to the involuntarily removed party (here, the plaintiff) also heavily favors remand. Ms. Jackson filed this case over a year ago, and discovery is underway. To now remove this case to federal court would impose significant disruption on Ms. Jackson (or her heirs, if she has died) and delay resolution of her claims by months or potentially years. Relatedly, the interest of judicial economy supports remand because the state court has already considered these state law claims for over one year – including during a hearing on the defendants' declinatory exceptions on October 19, 2018. The re-litigation of plaintiff's Louisiana-based claims

---

[139] *Houston Baseball Partners LLC v. Comcast Corp.* (*In re Houston Reg'l Sports Network, L.P.*), 514 B.R. 211, 217.

[140] *See, e.g., Pettus Props. v. VFC Partners 8, LLC* (*In re Pettus Props.*), 2012 Bankr. LEXIS 1181, *11; *Walter v. Freeway Foods, Inc.* (*In re Freeway Foods of Greensboro, Inc.*), 449 B.R. 860, 880-1 (Bankr. M.D.N.C. 2011) *Ardan Dev. Corp. v. Touhey*, 424 B.R. 730, 737 (Bankr. E.D.N.C. 2010).

[141] No. CV 19-9983, 2019 WL 2537837 (E.D. La. June 20, 2019).

in federal court would needlessly duplicate judicial resources that have already been committed to this case.[142]

*Jackson* is readily distinguishable from this case. With respect to prejudice, the plaintiff in *Jackson* filed her state court petition on March 19, 2018, and the defendant's notice of removal was filed over a year later on May 1, 2019.[143] In this case, A. A. Doe filed his petition in state court on January 27, 2021,[144] and the Archdiocese filed its Notice of Removal less than a week later on February 2, 2021.[145] Thus, refusing to remand A. A. Doe's case to state court would not "impose significant disruption" on him, and would not "delay resolution of [his] claims." Given that this lawsuit has been pending in this Court for over a year, and that the lawsuit was only pending in state court for a mere six days, remanding the case at this stage of the litigation will likely delay resolution of A. A. Doe's claims. With respect to judicial economy, because the plaintiff's claims in *Jackson* had been pending in state court for over a year before the notice of removal was filed, removal of that case ran the risk of needlessly duplicating judicial resources.[146] By contrast, in this case, judicial economy is better served if this Court declines to remand. As mentioned, this case has been pending in this Court for over a year, and the Court has ruled on several motions and developed some familiarity with the claims and defenses involved in this action. Were the Court to remand the case at this stage, judicial resources would be "needlessly duplicate[d]."

---

[142] *Id.* at *3.

[143] *Id.* at *1.

[144] *See* R. Doc. 1-1.

[145] R. Doc. 1.

[146] *Jackson*, 2019 WL 2537837 at *3.

26

Asare argues remanding this lawsuit to state court will have a negative effect on the efficient administration of the Archdiocese's bankruptcy estate. Specifically, Asare argues

> Here, the effect of central administration weigh (sic) heavily in favor of maintaining jurisdiction and against remand. This Court presently has pending more than "thirty-five similar cases" involving child sexual abuse claims by clergy members working for Debtor. . . . If remanded, Debtor may be forced to respond to duplicative discovery in multiplicity of forums, and different courts would be deciding different issues of law and fact.[147]

The Court agrees with Asare that efficient administration of the Archdiocese's bankruptcy estate favors declining to remand this action to state court.

The Court finds that Plaintiff has failed to carry his burden of proving that permissive abstention and/or equitable remand are appropriate in this case.

## V.   Pursuant to the Court's inherent authority to control its own docket, A. A. Doe's motion for stay of Asare's defamation action is denied.

A. A. Doe urges the Court, pursuant to its inherent authority to control its docket, to stay Asare's defamation counterclaims on the grounds that "a defamation action cannot be maintained unless and until the resolution of the claims that gave rise to the alleged defamatory action."[148] A. A. Doe argues Louisiana courts follow the rule that a cause of action for defamation, based on statements made in pleadings filed in a judicial proceeding, does not arise until after the termination of the proceeding in which the alleged defamatory statements were made.[149] Plaintiff cites *Ballex v. Naccri*, an opinion from the Louisiana Fourth Circuit Court of Appeal, for the contention that "Louisiana courts have consistently held that an action for defamation arising out of allegations made

---

[147] R. Doc. 35 at p. 10.
[148] R. Doc. 29-1 at p. 1.
[149] *Id.* at pp. 3–6.

in judicial proceedings and against a party to those proceedings cannot be brought until those proceedings are terminated."[150]

In his opposition, Asare argues his counterclaims are "brought on the basis of false statements made by [A. A.] Doe outside of criminal or judicial proceedings," and that his counterclaims "pertain only to false statements made [by A. A. Doe] to parishioners."[151] Asare concedes that, under Louisiana jurisprudence, defamation claims based on statements made within a judicial proceeding cannot proceed until the termination of such judicial proceeding because "these claims are premature and do not arise until the termination of the proceeding in which the allegedly false statements were made."[152] Asare contends, however, that because he does not bring any defamation claims based on statements made by A. A. Doe within a judicial proceeding, his counterclaims are not premature.[153] Asare argues, because his counterclaims are based on statements made outside of a judicial proceeding, they are not premature.[154]

In his reply memorandum, A. A. Doe disputes that Asare's claims are based solely upon statements made by A. A. Doe to parishioners, and argues Asare's counterclaims are actually based upon statements made by A. A. Doe within the context of this lawsuit.[155] A. A. Doe argues the timeline of events belies Asare's contention his claims are based on statements to parishioners.[156] Specifically, A. A. Doe points out that "it was only after the lawsuit was filed by A.A. Doe that any professional action was taken against Asare-Dankwah by the Archdiocese – January 27, 2021 the date of the lawsuit and removal from

---

[150] *Id.* at p. 3 (quoting *Ballex v. Naccari*, 95-57 (La. App. 4 Cir. 6/7/95); 657 So. 2d 511, 512).
[151] R. Doc. 36 at pp. 2–3.
[152] *Id.* at p. 3.
[153] *Id.*
[154] *Id.* at pp. 3–4.
[155] R. Doc. 45 at p. 2.
[156] *Id.* at pp. 2–3.

ministry."[157] A. A. Doe also argues a public statement made by the Archdiocese, whereby the Archdiocese asserted it had no notice of the sexual assault allegation against Asare prior to the filing of A. A. Doe's lawsuit, further undermines Asare's contention that his claims do not arise out of allegations made by A. A. Doe in judicial proceedings.[158] A. A. Doe argues that, considering the issues raised by Asare in his counterclaims, "it is the better option to stay all of those claims until the resolution of the abuse claim," filed by A. A. Doe.[159]

"Louisiana case law recognizes a qualified privilege that provides parties to pending litigation the protection from being sued for defamatory statements made during judicial proceedings."[160] The "jurisprudence of this state has consistently and unequivocal[l]ly held that an action for libel or slander arising out of allegations or statements made in a judicial proceeding cannot be brought by a party to the judicial proceeding until the proceeding is terminated."[161] Until termination of the proceeding in which the allegedly false statements were made, any defamation claim based upon such false statements is premature.[162] The Court must examine Asare's counterclaims to determine whether these rules of prematurity and qualified privilege apply to such claims.

In his counterclaim, Asare alleges as follows:

> In December 2020 and January 2021, Defendant falsely stated to parishioners at St. Peter Claver Catholic Church and Blessed Trinity

---

[157] *Id.* at p. 3. Attached as an exhibit to A. A. Doe's reply memorandum is a communication from the Archdiocese of New Orleans, dated January 27, 2021, which states that "[t]oday the Archdiocese of New Orleans was informed of a lawsuit alleging abuse of a minor against Fr. John Asare-Dankwah. The archdiocese had no notice of this allegation or this lawsuit prior to today and has not been served with this lawsuit. . . . Effective immediately, Archbishop Aymond has removed Fr. Asare from priestly ministry pending the outcome of the investigation." *See* R. Doc. 45-1.

[158] R. Doc. 45 at p. 4.

[159] *Id.* at p. 5.

[160] *Lemke v. Keiser & Auzenne, L.L.C.*, 2005-893 (La. App. 3 Cir. 2/1/06), 922 So. 2d 690, 692–93 (citing *Union Serv. & Maint. *693 Co., Inc. v. Powell*, 393 So.2d 94 (La. 1980) (Watson, J., concurring)).

[161] *Calvert v. Simon*, 311 So. 2d 13, 15 (La. App. 2d Cir. 1975).

[162] *Id.* at 16.

Catholic Church that in January 2008, Fr. Asare raped Defendant, while Defendant was a minor child attending a church retreat in Montgomery, Alabama.[163]

In December 2020 and January 2021, Defendant falsely stated to parishioners at St. Peter Claver Catholic Church and Blessed Trinity Catholic Church that in January 2008, Fr. Asare sexually assaulted Defendant, while Defendant was a minor child attending a church retreat in Ponchatoula, Louisiana.[164]

The allegations of the counterclaim reference only the allegedly false statements made by A. A. Doe to parishioners. Asare's counterclaim does not reference the allegations of the state court petition or the amended complaint.

Asare's counterclaim sets forth three causes of action, denominated as Counts I, II, and III, for defamation, false light invasion of privacy, and intentional infliction of emotional distress.[165] A. A. Doe argues, in effect, all three causes of action should be stayed under the rules of prematurity and qualified privilege followed by Louisiana courts. In *Simpson v. Perry* in which the Louisiana First Circuit Court of Appeal addressed the issue of whether a suit for damages for defamation and false light invasion of privacy, based upon allegations contained in a separate, underlying lawsuit, could be instituted before the underlying lawsuit was terminated.[166] In *Simpson*, an heir of the decedent filed a pleading in the succession proceeding challenging the amount of the legal fee sought by an attorney for his work on the succession.[167] Thereafter, and while the succession was still pending, the attorney sued the heir in a separate lawsuit, seeking damages for defamation and false light invasion of privacy.[168] The sole basis upon which the attorney

---

[163] R. Doc. 33 at ¶ 21.
[164] *Id.* at ¶ 21.
[165] *See id.* at ¶¶ 29–43.
[166] *Simpson v. Perry*, 2003-0116 (La. App. 1 Cir. 7/14/04); 887 So. 2d 14, 15.
[167] *Id.*
[168] *Id.*

sought damages was that statements made in the succession proceeding by the heir allegedly were defamatory and constituted false light invasion of privacy.[169] The court first recognized that "Louisiana courts have consistently held that an action for defamation arising out of allegations made in a judicial proceeding and against a party to those proceedings cannot be brought until those proceedings are terminated."[170] The court then noted that the analysis applied by Louisiana courts concerning the requirement that "the underlying proceeding be terminated prior to lodging the claim for defamation is not limited to actions for defamation."[171] The court found that the analysis was equally applicable to claims for false light invasion of privacy, explaining that

> A claim for false light invasion of privacy arises from publicity that unreasonably places the plaintiff in a false light before the public. In **4 analyzing a claim for false light invasion of privacy, the three elements to be considered are a privacy interest, falsity, and unreasonable conduct. . . . Clearly, the claim for such damages can only be litigated after the litigant making the statements has been given the opportunity to prove them in the suit in which they were made and has failed to do so. Therefore, considering the above jurisprudence and the nature of this cause of action, we conclude that an action for false light invasion of privacy arising out of allegations made in a judicial proceeding and against a party to that proceeding cannot be brought until that proceeding is terminated.[172]

It is not clear whether the same analysis applies to a claim for intentional infliction of emotional distress, but, because the Court is not staying the defamation action at this time, the Court need not resolve this issue.

The justification for staying a defamation action is applicable only when the alleged defamation is based on statements made in pleadings filed in a judicial proceeding. In that event, the defamation action does not arise until after the termination of the

---

[169] *Id.* at 16.
[170] *Id.* (collecting cases).
[171] *Id.*
[172] *Id.*

proceeding in which the alleged defamatory statements were made. In this case, the allegations in A. A. Doe's original complaint are based upon events occurring at a Catholic religious retreat *in or near Montgomery, Alabama*.[173] The allegations forming the basis of A. A. Doe's first amended complaint, however, are based only on events occurring at a Catholic religious retreat in *Ponchatoula, Louisiana*, and the amended complaint is devoid of allegations concerning Montgomery, Alabama.[174] "An amended complaint supersedes the original complaint and renders it of no legal effect."[175] A. A. Doe's amended complaint is the operative complaint in this lawsuit. As a result, the current allegations concern only those events occurring in Ponchatoula, Louisiana, and not those occurring in Montgomery, Alabama. To the extent Asare's counterclaim is based on events occurring in Montomery, Alabama, it is clear the rule of prematurity does not apply. To the extent Asare's counterclaim is based on events occurring in Ponchatoula, Louisiana, it is less clear.

In any event, the Court sees no justification for staying this action, and certainly sees no justification for staying it as to some of the allegations of the counterclaim and not others. The Court has broad discretion to stay proceedings as an incident to its inherent power to control its own docket.[176] It has not been shown that a stay would simplify the issues in question or streamline the issues for trial. A. A. Doe has not made out "a clear case of hardship or inequity in being required to go forward" on Asare's

---

[173] *See* R. Doc. 1-1 at p. 3.

[174] *See* R. Doc. 10 at ¶¶ 9–29.

[175] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).

[176] *See Clinton v. Jones*, 520 U.S. 681 (1997); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936).
2d 945 (1997)

counterclaims.[177] A. A. Doe has not carried his burden of showing that the circumstances of this case justify staying determination of Asare's counterclaims. The Court will exercise its discretion and deny A. A. Doe's motion to stay as to Asare's counterclaims regarding statements about Ponchatoula, Louisiana, and as to statements about Montgomery, Alabama. The relevant discovery as to all claims involved in this action will be the same or closely related, and the interests of judicial economy are served by moving forward with discovery of all claims. At the time of trial, the Court may, if appropriate, sever Asare's counterclaims until the determination of Asare's liability for A. A. Doe's claims.

## CONCLUSION

**IT IS ORDERED** that Asare's objection to A. A. Doe's proof of claim is **OVERRULED.**

**IT IS FURTHER ORDERED** that A. A. Doe's Motion to Dismiss and For Remand[178] is **DENIED.**

**IT IS FURTHER ORDERED** that A. A. Doe's Motion to Stay Defamation Action[179] is **DENIED.**

**New Orleans, Louisiana, this 3rd day of March, 2022.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[177] *See Landis*, 299 U.S. at 254–55.
[178] R. Doc. 28.
[179] R. Doc. 29.