UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| A.A. DOE, <br><br>　　　　　　Plaintiff, <br><br>vs. <br><br>THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, et al <br><br>　　　　　　Defendants. <br><br>*Applies To: ALL CASES* | CIVIL ACTION NO.: 21-215 c/w 21-1238 <br><br><br>SECTION: "E"(1) <br><br><br><br>JUDGE SUSIE MORGAN <br><br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD |

**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS'**
**OPPOSITION TO MOTION TO COMPEL**

The Roman Catholic Church of the Archdiocese of New Orleans (the "**Archdiocese**"), currently a non-party to this proceeding, through undersigned counsel, files this Opposition to the *Motion to Compel Production of Documents Pursuant to a Subpoena Duces Tecum* ("**Motion to Compel**") [Rec. Doc. 52] filed by Plaintiff A.A. Doe ("**Plaintiff**" or "**A.A. Doe**").

**SUMMARY**

Documents responsive to the subpoena issued by Plaintiff contain highly confidential, private, and personal information. Counsel for the Archdiocese advised counsel for Plaintiff that, subject to certain limited objections regarding the scope of the documents requested, the Archdiocese was agreeable to producing all relevant documents, provided that Plaintiff agreed that the documents would be subject to a protective order to maintain the confidentiality of the confidential information in the documents. The documents that the Archdiocese has which are responsive to the subpoena have previously been produced in discovery in the Archdiocese's pending bankruptcy proceeding and are already subject to a protective order issued by the bankruptcy court to maintain the confidentiality of the personal, private, and confidential

#100404750v5

information in those documents. Therefore, this Court should not order the production of these documents in this case unless the confidential information in the documents is protected by a protective order substantially the same as that issued by the bankruptcy court. Unless such a protective order is issued, the bankruptcy court's protective order will be undermined. Further, there is good cause shown for a protective order. Accordingly, for the reasons set forth in detail below, the Archdiocese respectfully requests that the Court deny Plaintiff's Motion to Compel and grant the Archdiocese's Motion for Protective Order, which the Archdiocese has filed simultaneously with this Opposition.

## BACKGROUND

In this suit, Plaintiff A.A. Doe asserts claims of abuse against Defendant John Asare-Dankwah ("**Asare-Dankwah**"), a priest, which allegedly occurred over fourteen years ago. Plaintiff served on the Archdiocese—currently a non-party to this proceeding—a Subpoena Duces Tecum (the "**A.A. Doe Subpoena**"), requesting that the Archdiocese produce certain documents regarding Asare-Dankwah. The Archdiocese objected to the breadth and scope of certain document requests but offered to produce all relevant documents regarding Asare-Dankwah, provided Plaintiff would agree to enter a protective order to protect the highly confidential information contained in the documents. The Archdiocese's documents regarding Asare-Dankwah, which it offered to produce to Plaintiff, were previously produced in discovery by the Archdiocese in the Archdiocese's related bankruptcy proceeding, subject to a protective order entered by the bankruptcy court. The Archdiocese offered to produce the Asare-Dankwah documents, subject to a similar protective order, but Plaintiff refused to agree to enter *any* protective order and filed the Motion to Compel.

#100404750v5                                         2

Plaintiff's Motion to Compel should be denied because the document requests in the A.A. Doe Subpoena (1) are overly broad, vague, and unduly burdensome; (2) seek documents that are not sufficiently related to the subject matter of this case and not proportional to the needs of this case; and (3) because the responsive documents contain highly confidential, sensitive, personal information, such as documents related to alleged abuse, which should not be produced without the protection of a protective order to maintain such information as confidential pursuant to Federal Rule of Civil Procedure 26.

**I.     The Bankruptcy Proceeding.**

On May 1, 2020 (the "**Petition Date**"), the Archdiocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana (the "**Bankruptcy Court**"), designated as *In re The Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 (Bankr. E.D. La.) (the "**Bankruptcy Proceeding**").

As of the Petition Date, the Archdiocese was named as a defendant in more than 30 civil actions filed in Louisiana state courts, arising out of allegations of abuse by a priest, deacon, or other individual allegedly associated with the Archdiocese. Shortly after the filing of the Bankruptcy Proceeding, the Archdiocese removed those lawsuits (as well as lawsuits that were filed after the Petition Date) to the United States District Court for the Eastern District of Louisiana (collectively referred to hereinafter as the "**Abuse Actions**").

On October 1, 2020, the Bankruptcy Court entered an order that established March 1, 2021 as the deadline for claimants to file a sexual abuse proof of claim in the Bankruptcy Proceeding (the "**Bar Date**"). [Bankruptcy Proceeding, Rec. Doc. 461]. As this Court has observed, A.A. Doe has filed a sexual abuse proof of claim in the Bankruptcy Proceeding. [Rec. Doc. 46, p. 3].

In July 2020, the Official Committee of Unsecured Creditors (the "**Committee**") began requesting documents from the Archdiocese in discovery in the Bankruptcy Proceeding (the "**Committee's Discovery Requests**"). The Committee's Discovery Requests, among other things, requested information regarding the Archdiocese's clergy assignments, personnel files, and other employment history, and information and documents regarding sexual abuse claims involving the Archdiocese and/or clergy. Much of the information and documents requested included confidential information of the Archdiocese and others (including alleged victims), necessitating that a protective order be in place to protect such confidential information. Accordingly, the Archdiocese filed a Motion for Protective Order in the Bankruptcy Proceeding, and, on August 3, 2020, the Bankruptcy Court issued a protective order (the "**Bankruptcy Protective Order**") to protect confidential information produced by the parties in the Bankruptcy Proceeding. [Bankruptcy Proceeding, Rec. Doc. 305].[1]

In response to the Committee's Discovery Requests, the Archdiocese produced in the Bankruptcy Proceeding documents regarding certain clergy, including personnel files, the Archbishop's files, legal files, victim files, and Victim's Assistance Coordinator files. These documents contained highly sensitive, confidential information regarding the Archdiocese and others and were therefore marked as confidential by the Archdiocese pursuant to the Bankruptcy Protective Order.

In January 2022, the Archdiocese discovered that certain confidential information produced by the Archdiocese was disclosed in violation of the Bankruptcy Protective Order.

---

[1] The Bankruptcy Court subsequently amended the Bankruptcy Protective Order at various times throughout the Bankruptcy Proceeding to add certain parties and provisions. *See* Amended Protective Order [Bankruptcy Proceeding, Rec. Doc. 729]; Supplemental and Amended Protective Order [Bankruptcy Proceeding, Rec. Doc. 885]; Second Supplemental and Amended Protective Order [Bankruptcy Proceeding, Rec. Doc. 1120].

Therefore, on January 20, 2022, the Archdiocese filed a *Sealed Motion for Entry of an Order: (A) Compelling the Tort Committee and/or its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "**Sealed Motion to Compel**") [Bankruptcy Proceeding, Rec. Doc. 1256]. The Office of the United States Trustee is currently investigating the alleged breach of the Bankruptcy Protective Order. [Bankruptcy Proceeding, Rec. Doc. 1468].

**II.     The Abuse Actions.**

The plaintiffs propounded discovery in several of the Abuse Actions while they were pending in state court and after they were removed in federal court. One of those Abuse Actions includes the lawsuit filed by J.W. Doe, who is represented by the same counsel who represent Plaintiff A.A. Doe in this case and the plaintiffs in several other Abuse Actions, and who also serve as individual counsel for certain members of the Committee in the Bankruptcy Proceeding.

Protective Orders, similar to the Bankruptcy Protective Order, have been entered in other Abuse Actions, to protect confidential information produced in discovery. For example, in the J.W. Doe Case, Judge Michael B. North entered a protective order to protect confidential information in the deposition of a clergy member and confidential documents produced by the Archdiocese in discovery. [*J.W. Doe v. Roman Catholic Church of the Archdiocese of New Orleans, et al*, Eastern District of Louisiana, Civil Action No. 20-1321, Rec. Doc. 56].

**III.    The A.A. Doe Lawsuit.**

On January 27, 2021, after the filing of the Bankruptcy Proceeding, A.A. Doe commenced this action by filing a Petition in the Civil District Court for the Parish of Orleans against the Archdiocese, Archdiocese of New Orleans Indemnity, Inc. ("**Archdiocese Indemnity**"), the Blessed Trinity Catholic Church ("**Blessed Trinity**"), and Asare-Dankwah. A.A. Doe alleged

claims of abuse against Asare-Dankwah that allegedly occurred when A.A. Doe was a minor at the time.

On February 2, 2021, the Archdiocese removed the case to this Court. The Court initially stayed the case pending the resolution of the Bankruptcy Proceeding. [Rec. Doc. 7]. However, on March 29, 2021, the Court entered an order, granting A.A. Doe leave to file an Amended Complaint and dismissing the Archdiocese, Archdiocese Indemnity, and Blessed Trinity as Defendants. [Rec. Doc. 9]. A.A. Doe then filed an Amended Complaint [Rec. Doc. 10] alleging the same allegations of abuse against Defendant Asare-Dankwah but removing the Archdiocese, Archdiocese Indemnity, and Blessed Trinity as Defendants. Subsequently, on August 25, 2021, the Court lifted the stay and administratively opened the case. [Rec. Doc. 13].

On March 21, 2022, Plaintiff served the A.A. Doe Subpoena on the Archdiocese—a non-party to this case—requesting several broad categories of documents, such as (1) Asare-Dankwah's entire personnel file; (2) all communications between the Archdiocese and Asare-Dankwah; (3) all Review Board Files regarding Asare-Dankwah; (4) all documents referencing the payment of legal fees regarding Asare-Dankwah; (5) all media stories regarding Asare-Dankwah; (6) all communications between the Archdiocese and law enforcement; and (7) all communications with the Archbishop. [Rec. Doc. 52-4]. The A.A. Doe Subpoena specified a return date of April 22, 2022. *Id*.

Within fourteen days of service of the A.A. Doe Subpoena on the Archdiocese, on April 4, 2022, the Archdiocese served its responses and objections on Plaintiff. [Rec. Doc. 52-5].

On April 22, 2022, Plaintiff's counsel and the Archdiocese's counsel held a discovery conference to discuss the Archdiocese's responses and objections to the A.A. Doe Subpoena. The Archdiocese's counsel explained why many of the document requests were overly broad and

burdensome, but, again, reiterated that the Archdiocese would agree to produce all relevant documents related to Asare-Dankwah, which were the same documents that had already been produced in discovery in the Bankruptcy Proceeding, as long as Plaintiff would agree to enter a protective order—similar to the Bankruptcy Protective Order—to protect confidential information.

On April 22, 2022, the Archdiocese's counsel sent Plaintiff's counsel a copy of the Archdiocese's proposed protective order (the "**Proposed Protective Order**"), which substantively contains the same or similar provisions and confidentiality protections as the Bankruptcy Protective Order. *See* Exhibit A, Proposed Protective Order. The Proposed Protective Order provides a mechanism for parties and non-parties in this case to mark documents produced in discovery as confidential and protects such confidential information from being used for any purpose except solely in connection with this litigation. *Id*. at ¶¶ 7, 8. In its Motion to Compel, Plaintiff rejects the form of protective order proposed by the Archdiocese. [Rec. Doc. 52-1, pp. 7-12].

The Court should deny Plaintiff's Motion to Compel and grant the Archdiocese's Motion for Protective Order, which is being filed simultaneously with this Opposition.

## LAW AND ARGUMENT

I. **The A.A. Doe Subpoena is overly broad, unlimited in scope, and seeks irrelevant information.**

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas to obtain discovery from non-parties. The party issuing the subpoena "must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). Additionally, subpoenas under Rule 45 to a third party "are discovery devices which, although

governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26." *In re Application of Time, Inc.*, No. 99-2916, 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999).

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery. It states, in part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The factors the court should consider when determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Here, the A.A. Doe Subpoena seeks several broad categories of documents *without any limitation as to subject matter and/or reasonable time limitation*, including: (1) Asare-Dankwah's entire personnel file; (2) all communications between the Archdiocese and Asare-Dankwah; (3) all Review Board Files regarding Asare-Dankwah; (4) all documents referencing the payment of legal fees regarding Asare-Dankwah; (5) all media stories regarding Asare-Dankwah; (6) all communications between the Archdiocese and law enforcement; and (7) all communications with the Archbishop. [Rec. Doc. 52-4].

These document requests, without any reasonable time or subject matter limitation, are overly broad and are not sufficiently related to the subject matter of this case and not proportional to the needs of this case. First, the A.A. Doe Subpoena would require the Archdiocese to conduct a forensic examination of computers and cell phones which is not warranted. This requirement is due to the fact that the A.A. Doe Subpoena defines "documents" and "files" as including "deleted files." [Rec. Doc. 52-4]. Searching for deleted files would require the Archdiocese to hire a vendor to conduct a forensic examination of its computers and cell phones. Such a request is unduly

burdensome, and there is no good cause for such a request. *See Nola Spice Designs, LLC v. Haydel Enters.*, No. 12-2515, 2013 U.S. Dist. LEXIS 108872, at *6 (E.D. La. Aug. 2, 2013) (denying request for forensic examination).

Second, several of the communications and files requested are not limited to documents about Defendant Asare-Dankwah but, as worded, would include documents regarding *any* Archdiocese clergy or employee. *See* Document Request Nos. 7-8 [Rec. Doc. 52-4]. Third, gathering essentially every communication and document regarding Asare-Dankwah no matter how menial and insignificant—which are scattered throughout various files maintained only in *paper* format over a period of many years—would likely require months of labor. *See* Document Request Nos. 3, 4, 6-14 [Rec. Doc. 52-4]. The Archdiocese should not be required to conduct such time consuming and extensive discovery. *See Ifg Port Holdings v. Lake Charles Harbor & Terminal Dist.*, No. 16-00146, 2018 U.S. Dist. LEXIS 245498, at *6 (W.D. La. July 9, 2018) ("Rule 45[(d)(1)] affords non-parties a higher protection in terms of the burden that can be imposed upon them and states that the party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden on a person subject to the subpoena.") (internal citations omitted).

II.  **There is good cause to enter a protective order to protect confidential information produced by parties and non-parties in discovery in this case.**

The Federal Rules of Civil Procedure state that before a protective order may issue, the movant must show good cause by demonstrating a particular need for protection. *See* Fed. R. Civ. P. 26(c)(1); *EEOC v. Signal Int'l, L.L.C.*, No. 12-557, 2013 U.S. Dist. LEXIS 128990, at *13 (E.D. La. Sep. 10, 2013). There can be no doubt that a protective order is necessary and appropriate in cases such as this one. The documents that the Archdiocese will produce are the *same* documents that the Archdiocese produced regarding Asare-Dankwah in connection with an abuse claim filed

by A.A. Doe in the Bankruptcy Proceeding and which are currently protected by the Bankruptcy Protective Order. This Court should not order production of such documents without a similar protective order. The Archdiocese proposed that Plaintiff agree to a similar protective order. *See* Exhibit A, Proposed Protective Order; Plaintiff's counsel, however, refused to agree to enter *any* protective order in this case.

> **A.    Discovery in this case will involve the production of private, personal, confidential information, including information regarding sexual abuse claims.**

Discovery in this case will involve the production of confidential and private information, such as clergy personnel files and sensitive information relating to sexual abuse claims. For example, among other things, the A.A. Doe Subpoena seeks Asare Dankwah's personnel file, the Archbishop's files, communications with law enforcement, and other documents regarding alleged abuse [Rec. Doc. 52-4].

Courts have consistently held that information provided in civil discovery is not "public," and a protective order restricting dissemination is an appropriate method to preserve confidentiality and protect against public disclosure. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *United States v. Carriles*, 654 F. Supp. 2d 557, 572-73 (W.D. Tex. 2009) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.") (citing *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1996)); *In re Gannett News Serv., Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) (holding that "[t]he results of pretrial discovery may be restricted

from the public" and "temporary denial of access [to evidence not yet ruled admissible] constitutes no form of prior restraint"); *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (discovery in civil litigation "is generally private" and is not "public disclosure" but "private disclosure for a limited use.").

Further, courts have found that a showing of "good cause" for a protective order may be made where it is readily apparent from the nature of the information sought that such information contains confidential, sensitive, private information that should not be disclosed to the public. For example, in *EEOC v. Signal International*, this Court found that a protective order prohibiting parties from publicly disseminating information obtained through pre-trial discovery was warranted given "the highly sensitive nature of the lawsuit" and the "potential for abuse through the media." 2013 U.S. Dist. LEXIS 128990, at *2. The Court "[could] not fathom why the dissemination of any information obtained through the discovery process outweighs the privacy interest of the parties and non-parties at this time." *Id.; see also Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, No. 09-7434, 2010 U.S. Dist. LEXIS 120303, at *12-14 (E.D. La. Oct. 22, 2010) (finding good cause for a protective order where each party alleged that the other had "waged a negative media campaign against it" and given "the potential for widespread dissemination of discovered information to the public"); *Duling v. Gristede's Operating Corp.,* 266 F.R.D. 66, 73 (S.D.N.Y. 2010) (finding that information requested through discovery was confidential "by its nature" and therefore concluding that there was good cause for a protective order without looking at specific examples of documents).

Finally, courts have consistently found that personnel files, such as the Archdiocese's clergy personnel files, are confidential and should be produced only subject to a protective order. *See May v. FedEx Freight Se., Inc.*, No. 07-660-B-M2, 2009 U.S. Dist. LEXIS 48257, at *10 (M.D.

La. June 8, 2009) (finding that the entirety of the personnel file should be protected as confidential pursuant to a protective order); *Cannon v. Lodge*, No. 98-2859, 1999 U.S. Dist. LEXIS 12358, 1999 WL 600374, at *1 (E.D. La. Aug. 6, 1999) (ordering that personnel records and investigative and complaint records be produced only subject to a protective order); *D'Antoni v. Roach*, No. 97-1799, 1997 U.S. Dist. LEXIS 16085, 1997 WL 627601, at *4 (E.D. La. Oct. 10, 1997) (ordering the production of personnel and internal investigation files, subject to the restriction that all information remain confidential and be "used only for purposes of this litigation").

Here, like in these cases, there is good cause to enter a protective order to protect the confidential, personal, private information of the Archdiocese and others, such as information found in clergy personnel files and information about sexual abuse claims, particularly considering the highly sensitive nature of this proceeding and the potential for abuse through the media.[2] The Archdiocese's clergy personnel files generally include private information about a number of things, including, but not limited to, baptisms and marriages, protected health care information, salary and benefits information, private correspondence, and other personal identifiable information, such as social security numbers, tax identification numbers, telephone numbers, and addresses. Certain personnel files also include information regarding alleged sexual abuse claims and settlement agreements (some with confidentiality agreements that provide that such information may not be disclosed without permission of the parties and order of the court).

In fact, the Archdiocese's Proposed Protective Order is based on the form of protective order which was entered in the Bankruptcy Proceeding and in other Abuse Actions, such as the J.W. Doe Case. Indeed, most, if not all, of the same documents Plaintiff requests in this case have

---

[2] As explained above, the Office of the United States Trustee is currently investigating an alleged breach of the Bankruptcy Protective Order. [Bankruptcy Proceeding, Rec. Doc. 1468].

#100404750v5                                12

already been produced as confidential in the Bankruptcy Proceeding pursuant to the Bankruptcy Protective Order.

Accordingly, as in the foregoing cases, the Court should enter the Archdiocese's Proposed Protective Order to protect private, sensitive information about the Archdiocese and others and information about alleged sexual abuse claims.

**B.  The Archdiocese's Proposed Protective Order provides a necessary and proper mechanism for parties to protect confidential information that will be produced in discovery.**

The Archdiocese seeks entry of a standard protective order to protect confidential documents and information produced in discovery and provides a process for making the determination as to whether or not a particular document should be protected. The Archdiocese's Proposed Protective Order provides the usual process whereby parties can submit documents to each other marked "CONFIDENTIAL" and, if either party challenges the confidentiality designation, the Court will hold a hearing to determine whether the documents are in fact confidential and require protection. Exhibit A, Proposed Protective Order, ¶¶ 5(a), 18, 19. The Archdiocese's Proposed Protective Order simply seeks to protect confidential information produced in discovery and prohibit disclosure and use of such information except for purposes of this litigation. *Id.* at ¶¶ 8, 9.

Accordingly, the Archdiocese respectfully requests that the Court enter the Proposed Protective Order because it provides a reasonable and practical mechanism for the parties to designate certain documents as confidential in light of the private, confidential information that will be produced in this case, while providing other parties in this case an equal opportunity to challenge any confidentiality designations.

**C.  Plaintiff confuses the clear distinction between court records and pre-trial discovery documents that have not yet been admitted into evidence.**

Plaintiff argues that the Court should first review all the discovery materials alleged to be confidential, conducting a document-by-document review, before a protective order is entered protecting any discovery documents. [Rec. Doc. 52-1, pp. 7-12]. In support, Plaintiff cites to a handful of cases. *Id*. None, however, are availing.

First, Plaintiff confuses the clear distinction between court records and pre-trial discovery documents that have not yet been admitted into evidence. In *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021), the protective order at issue authorized "the sealing, in perpetuity, of any documents that the parties themselves labeled confidential." The court explained the danger in allowing litigants, instead of the court, wide latitude to seal *judicial records*, as opposed to discovery documents. *Id*. Specifically, the court explained the difference between marking discovery documents as confidential during the discovery process and sealing judicial records filed in the court's record as follows:

> At the *discovery stage*, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper. Party-agreed secrecy has its place—for example, honoring legitimate privacy interests and facilitating the efficient exchange of information. But at the *adjudicative stage*, when materials enter the court record, the standard for shielding records from public view is far more arduous. This conflation error—equating the standard for keeping unfiled discovery confidential with the standard for placing filed materials under seal—is a common one and one that over-privileges secrecy and devalues transparency.

*Id*. (emphasis in original).

Moreover, the issue before the *Binh Hoa Le* court was whether a motion for summary judgment should be affirmed, not whether any discovery documents or judicial records should be sealed. *Id*. at 416. Therefore, its discussion regarding sealing records was simply dicta. *Id*.

Here, the Archdiocese's Proposed Protective Order governs the process of handling confidential information exchanged during discovery. Unlike in *Binh Hoa Le*, it does not usurp the Court's authority to seal documents that are filed into evidence in the Court's judicial record.

The other cases cited by Plaintiff are also inapposite. In *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417 (9th Cir. 2011), the issue before the court was whether certain documents marked as confidential pursuant to the protective order should be de-designated as confidential and released to the public. The issue was not the form of protective order the court should enter. *Id*. In fact, the protective order entered by the court in that case was similar to the Archdiocese's Proposed Protective Order, allowing the parties to mark information as confidential as documents were exchanged during discovery and providing a procedure for the parties to later challenge any confidentiality designations. *Id*. at 421-22.

Finally, in *Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994), the issue before the court was whether the leaking of a video produced in discovery in a criminal case could support an invasion of privacy claim. No protective order had been entered or was at issue in *Cinel*. *Id*.

As explained in the preceding section, Plaintiff may use the documents obtained from the Archdiocese in discovery for legitimate purposes relating to this lawsuit. But, for Plaintiff, that is not enough. Plaintiff instead insists on the right to unilaterally place a third party's documents into the public domain, and use them for purposes *unrelated* to the claims, such as attracting publicity to its case. Plaintiff's desire (or that of its counsel) to attract publicity is especially ironic where, as here, Plaintiff's identify is shielded from public knowledge in order to protect its privacy interests. Obtaining materials in discovery for use in a lawsuit is one thing; disclosing and disseminating discovery materials for purposes *unrelated* to the claims or defenses in the lawsuit is another thing. As explained above, courts recognize that discovery is inherently private in nature,

and that disclosure of discovery materials beyond the confines of the lawsuit is unwarranted and, therefore, disallowed. Plaintiff's apparent position (that materials obtained through discovery are, by default, freely subject to dissemination and disclosure for purposes *unrelated* to the lawsuit) is contrary to law, and should be rejected.

In any event, the issue before the Court is the process of designating documents as confidential, *not* whether certain documents produced are in fact confidential. If Plaintiff believes that certain produced documents have been incorrectly labeled confidential, Plaintiff will have the opportunity to challenge the confidentiality designation of such documents at a hearing before the Court pursuant to the procedure set forth in the Proposed Protective Order. *See* Exhibit A, Proposed Protective Order, ¶¶ 5(a), 18, 19.

## CONCLUSION

For the foregoing reasons, the Archdiocese respectfully requests that the Court deny Plaintiff's Motion to Compel and grant the Archdiocese's Motion for Protective Order.

Respectfully submitted,

*/s/ Allison B. Kingsmill*
WAYNE G. ZERINGUE, JR. (#18516)
JOSEPH J. LOWENTHAL, JR. (#08909)
JEFFERSON R. TILLERY (#17831)
EDWARD D. WEGMANN (#13315)
ALLISON B. KINGSMILL (#36532)
Jones Walker LLP
201 St. Charles Avenue, Suite 5100
New Orleans, LA 70170
Telephone: 504-582-8682
Facsimile: 504-589-8682
Email: wzeringue@joneswalker.com
jlowenthal@joneswalker.com
jtillery@joneswalker.com
dwegmann@joneswalker.com
akingsmill@joneswalker.com

and

#100404750v5                    16

        RICHARD A. BORDELON (#14091)
        TODD R. GENNARDO (#32039)
        DYLAN K. KNOLL (#35507)
        Denechaud and Denechaud, L.L.C.
        201 St. Charles Avenue, Suite 3920
        New Orleans, LA 70170
        Telephone:   504-522-4756
        Facsimile:    504-568-0783
        Email:         rbordelon@denechaudlaw.com
                       tgennardo@denechaudlaw.com
                       dknoll@denechaudlaw.com

*Attorneys for the Roman Catholic Church of the Archdiocese of New Orleans*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of May, 2022, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which provides notice of filing to all counsel of record by electronic means.

                                            */s/ Allison B. Kingsmill*
                                            Allison B. Kingsmill