UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| A.A. DOE | * | CA- NO.: 2:21-CV-215 |
| | * | c/w 2:21-CV-1238 |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| ROMAN CATHOLIC CHURCH OF | * | |
| THE ARCHDIOCESE OF NEW | * | MAG. JANIS VAN MEERVELD |
| ORLEANS, ET AL. | * | |

*Applies To: ALL CASES*

**MEMORANDUM IN SUPPORT OF MOTION TO
DE-DESIGNATE CONFIDENTIAL DOCUMENTS,
AND MODIFY TERMS OF THE PROTECTIVE ORDER**

MAY IT PLEASE THE COURT:

Pursuant to this Court's Order of on August 29, 2022 [Rec.Doc. 79, p. 2], and the Protective Order entered in this matter on July 7, 2022 [Rec.Doc. 70, sect. 9], the Complainant, A.A. Doe, moves this Court for an Order to de-designate certain documents as not confidential.

In response to the subpoena, the Archdiocese of New Orleans produced a Report prepared by its own accountants that ▮. According to the Archdiocese's own accountants, the ▮ ▮. The Report appears to evidence ▮. The Report also appears to evidence ▮, depending on how the Archdiocese ▮.

The Report is not "confidential" as defined in the Protective Order. The Report appears to evidence ▮. The Report must be submitted to the relevant ▮ ▮.[1] The Report must also be submitted to the ▮

---

[1] The parties have agreed to a ▮.

1

███████████████. The Report does not concern "trade secrets" of the Archdiocese or include personal identifying information. The Report does bear upon ████████████████ ████

## FACTUAL BACKGROUND

This case arises out of the sexual assault by Father John Asare-Dankwah on the plaintiff, A.A. Doe. The allegations in the Petition are as follows:

> On the fifth day of the seven-day retreat, Dankwah approached Doe during the sacrament of penance and asked Doe if Doe loved him and loved God. Dankwah was hearing Doe's confession in a darkened anteroom of the chapel instead of the more typical confessional booth. Immediately after asking Doe to profess his love of God, Dankwah unzipped his pants and exposed his genitals to Doe and directed Doe to come to him. Doe refused at least twice to follow the priest's direction then Dankwah grabbed Doe's arm and pulled him into contact with Dankwah's body. Dankwah then held Doe down and forced him to lower his pants and underwear to ankle height. Dankwah told Doe that "this will be over quickly." Dankwah then forcefully engaged Doe in anal intercourse until Dankwah reached orgasm.
>
> Dankwah then instructed Doe to put his pants on and leave. Doe was in horrible pain and crying uncontrollably during the assault and as he left the chapel. Doe was in pain, fear, and shock that night and asked a close friend in the bunk below him to share his bunk. The friend agreed and they slept together facing away from each other. The following morning, Dankwah entered the sleeping dormitory and found Doe, who was pretending to be asleep in the bed in order to avoid talking to or interacting with Dankwah in any manner. Dankwah, seeing Doe, dragged him from the bed into another room where the two were alone. Dankwah proceeded to strike Doe repeatedly while praying and accusing Doe of being a homosexual, which, he explained was a great sin against God. Directly thereafter, Dankwah commanded him to recite the usual Catholic confessional prayers to be absolved for his sins. The beating was especially painful because Dankwah struck Doe repeatedly in the area of his already traumatized anus.

*Petition*, ¶¶ 15-27, Rec. Doc. 1-1.

Asare-Dankwah filed a separate claim of defamation against A.A. Doe as an adversarial action in the Bankruptcy proceeding filed by the Archdiocese of New Orleans on May 1, 2021,

2

based on the assertions made by A.A. Doe in the main lawsuit, alleging financial and professional injury among other damages. After several procedural motions before the District Court that withdrew the referral to the Bankruptcy Court, both actions are now consolidated before this Court and exist as matters before the District Court jurisdiction without any Bankruptcy restrictions.

The parties are continuing to exchange requested discovery, and because the Defendant Asare-Dankwah was an employee of the Archdiocese of New Orleans at the time of the abuse, the Archdiocese has produced documents in response to a subpoena duces tecum and records deposition under FRCP Rule 45.[2] In advance of the production, the Archdiocese demanded a protective order be entered to ostensibly keep secret allegedly confidential materials. This demand was met with motion practice before Magistrate Judge Van Meerveld to determine the proper terms to include in the protective order.

While Complainant was not totally against the entering of a protective order, even though no showing was made by the Archdiocese, the Complainant sought to include certain sections to ensure that professional obligations and legal obligations would not be curtailed by a blanket protective order. Specifically, Complainant sought to include a section to allow for certain safe harbor protections with specific language based on an attorney's professional obligations to report ███████████, and to act for the protection of children. Those suggestions were rejected by the Magistrate Judge, and her decision was affirmed by this Court.

The subsequent production made by the Archdiocese contains documents that ████████ ███████████████████████████████████. In response to the revelation of the ███████████████████████████████, and in accordance with the terms of the Protective Order and this Court's directive of August 29, 2022, a meet and confer conference was conducted

---

[2] The parties continue to meet and confer concerning the inadequacy of the production.

3

on September 14, 2022. While the conference included several discovery issues, the primary focus centered on the Report ███████████████████████████████.

Undersigned counsel expressed to Archdiocesan counsel that ████████████ could not be designated as confidential and asked whether the Archdiocese had ██████████ ████████████████████████████████████████████████. Complainant's counsel also requested permission from the Archdiocese's counsel to allow Complainant's counsel to ████████████████████████████████. Archdiocesan counsel stated that ██ ████████████████████████████████. *Email from Wegmann to Denenea*, at 1 (09/16/22), attached as Exhibit 1, filed under seal. Ultimately, the Archdiocese conceded that ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████. *Email from Wegmann to Denenea*, at 1 (09/21/22) (emphasis in original), attached as Exhibit 2, filed under seal. The Archdiocese did, however, maintain that the Report should be kept confidential. *Id.*

I.      ████████████ **cannot be protected as "confidential" pursuant to F.R.C.P. Rule 26 or any protective order.**

4

There is no distinction between a pending case, evidence in discovery, or even evidence under a protective order. Any person having knowledge of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬

Additionally, there are concurrent professional obligations that have been recognized by the Louisiana Supreme Court to ▬▬▬▬▬▬. In a disciplinary case that involved only ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, the Louisiana Supreme Court dismissed charges against the respondent based on the facts of that case:

[redacted block]

[redacted block]

[redacted block]

[redacted block]

Complainant and undersigned counsel take this issue seriously, recognizing that ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ could have a significant impact on the administration of justice and expose them to extrajudicial consequences.

_____

[redacted block]

In this case, the Archdiocese's subpoena return included ███████. On August 23, 2021, the Archdiocese's ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ 10 (08/23/21), ANO (21-00215)_00000581, attached under seal as Exhibit 3. The Report's "Summary of Findings" state as follows:



*Id.* (emphasis in original).

The Archdiocese is the ████████████ that they have designated as confidential. *Id.* The Archdiocese appears to have ████████████████████████████ ████████████████████████ *LTR Aymond to Asare*, at 1 (10/31/17), ANO (21-00215)_00000026, attached as Exhibit 4 ("Once again to reiterate, it was decided that $140,087 of

6

St. Peter Claver's parish share for the fiscal year ending June 30, 2018 will be written off.").⁴ It is unclear whether the Archdiocese ███████████████████████████████████.

Although counsel for the Archdiocese initially stated that ███████████████ ███████████████, it now claims to have ███████████████. The Archdiocese did <u>not</u> produce any records that ███████████████████████████. In fact, the Archdiocese did not produce any documents that show ███████████████. Instead, Archdiocese counsel simply stated in an email: "███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████

███ *EMAIL from Wegmann to Denenea*, at 1 (09/19/22) (emphasis in original), filed under seal as Exhibit 5.⁶

Archdiocesan counsel's email demonstrates: (1) there is no evidence that ███████████ ███████████; (2) there is no evidence that ███████████████████████; and (3) any ███████████ by general counsel would have inadequately conveyed the ███████████ ███████████████████████████████████. This also raises the question of whether general counsel's ███████████ resulted from a concerted decision by the Archdiocese to ███████████████████████████████████.

---

⁴ The Archdiocese did not designate this letter as "confidential".
⁵ The Archdiocese's general counsel is Susan Zeringue who is married to Jones Walker LLP partner Wayne Zeringue, making it not credible that ███████████████████████████ ███████████.
⁶ The Wegmann email is being filed under seal out of an abundance of caution but should likewise be made public when the Report becomes public.

7

███████████ This is especially true where the ███████████ may have been made well after receiving ████████████████████████████████.

No records indicate that a ███████████████████████████████████████. This is important because █████████████████████████████████████████████████ █████████████████████████████████████████████████ have vested interests to ensure that █████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████

Moreover, the Archdiocese did not produce any documents that show it ███████ █████████████████████████████████████████████████████████████████

█████████████████████████ The Bankruptcy Court presides over the Archdiocese's Chapter 11 complex bankruptcy, and must be apprised of any █████████████████████████ █████████████████████████████████████████████████████████████████

█████████████████████████ There is no evidence or documentation in what the Archdiocese has produced that would suggest that the Archdiocese has done any of these things.

The ███████████████ must also be informed. The █████████████████████████ █████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████

---

[7] It is unclear how memorializing a conversation with a third-party ███████████ could be considered protected as "attorney work product" privilege. That issue will be addressed after receiving the supplemental privilege log.

In the September 5, 2022 status conference, this Court appeared to agree with undersigned counsel that there should be no redaction or designating any document "confidential" that contained ███████. The attached document undoubtedly shows that the Archdiocese ████████████████████████████████████████████████████ ███████████████████████████████████████████ For that reason, the documents should have any "confidential" designation removed.[8]

Additionally, although the Archdiocese may suggest that it has taken ███████ ██████, that does not relieve undersigned counsel from their own professional obligations to ███████████████████████████████████████████. Undersigned counsel must be permitted to ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████) without fear of reprisal that fulfilling their professional and legal obligations would subject undersigned counsel to frivolous attacks alleging a protective order violation.[9] Counsel's legal and professional duties have been complicated by this Court's protective order as well as the bankruptcy court's protective order.

Because the Report should be provided to ███████████████████ ██████████████████████████████████ the Report's "confidentiality" designation is rendered meaningless. The Report will be used ████████████ ████████████████████████████████████████████████████

---

[8] ████████████████████████████████████████████████████
████████████

[9] It is unclear whether the Report was ever produced to the ███████████████
████

The act of submitting ███████████████████████████████████████████

██████████████████████████████ moots any confidentiality protections because these ██████████████████████████████ are not bound by the protective order. They are third parties receiving alleged "confidential" documents which the Archdiocese consents to being produced. *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003) (citing *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir.1982) ("Additionally, a client's disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents.").

Protective orders are not designed to ██████ ██████. Not only are documents that ██████ ██████ not confidential but they can destroy privileged communications pursuant to ██████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████.

## II.     The Protective Order Should be Modified.

To avoid this same issue in the future, the Court should modify the protective order. At the very start of this process, undersigned counsel suggested revisions to the protective order which provided that ██████████████ would not be considered confidential. ██████████████

10

███   The Magistrate Judge denied the request. When the Protective Order was appealed before this Court, the issue of a ███████ of the protective order was tacitly rejected when this Court denied the Complainant's appeal to include such a provision. However, when it addressed all counsel during the September 5, 2022 status conference, this Court made perfectly clear that counsel for the Archdiocese should be very careful before stamping documents "confidential."

Now that this issue is squarely before the Court, an additional solution is to modify the Protective Order and include a ███████████. The following language should be added to the Protective Order:



The following factors should be considered in deciding whether to modify a protective order: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order[,] and most significantly[,] (4) whether good cause exists for the modification." *Schafer v. State Farm & Fire Cas. Co.*, No. 06-8262, 2009 WL 650263 (E.D. La. 2009) (Duval, J.). Umbrella protective orders, like the one entered in this case, are the most susceptible to modification. *See Raytheon Co. v. Indigo Sys. Corp.*, 2008 WL 4371679 (E.D. Tex. 2008).

Presently, without any involvement by the Court, the Archdiocese, or any party, can designate ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ as "confidential". The broad authority of designating any document as confidential was certainly not this Court's or the Magistrate Judge's intention on formulating the initial protective order, and especially where documents ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ Therefore, the Protective Order should be modified ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇.

## CONCLUSION

Based on the professional and legal obligations involved in ▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and based on this Court's concern over improper stamping of non-confidential documents as confidential, the attached Report should be de-designated as non-confidential; undersigned counsel s▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; and the protective order should be modified to allow for this process to be unimpaired by any party's unreasonable restriction ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇.

RESPECTFULLY SUBMITTED,

/S/ SOREN E. GISLESON
_____
SOREN E. GISLESON (#26302)
JOSEPH E. "JED" CAIN (29785)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: 504-581-4892
Fax: 504-561-6024
sgisleson@hhklawfirm.com
jcain@hhklawfirm.com

12

-AND-

RICHARD C. TRAHANT (#22653)
Attorney at Law
2908 Hessmer Avenue
Metairie, Louisiana 70002
Telephone: 504-780-9891
Fax: 504-780-9891
trahant@trahantlawoffice.com

-AND-

**SHEARMAN~DENENEA, L.L.C.**
**JOHN H. DENENEA, JR. (#18861)**
4240 Canal Street, 2nd Floor
New Orleans, LA  70119
Telephone: (504) 304-4582
Fax (504) 304-4587
jdenenea@midcitylaw.com

-AND-

DESIRÉE M. CHARBONNET (24051)
365 Canal Street
Suite 1100
New Orleans, LA 70130
Telephone: (504) 399-3374
Fax: (504) 561-7850
dcharbonnet@desireelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those participants in the CM/ECF filing system.

I further certify that there are no non-CMECF participants in this matter.

/S/ SOREN E. GISLESON
_____
SOREN E. GISLESON